I'm not going to take away the three minutes you used, I'm just going to give you a little Thank you, Your Honor. I guess we asked for it to be scheduled this way, so I can't complain now. Thank you, Your Honor. What we have here is, we have a more clear argument with respect to a statistical analysis request, which we just went over. So it's the same four claim terms, you're right, Your Honor. And with respect to the prior art, there's one more prior art reference, Majum Calda. In addition to Sortino and Barroquand, there is another reference. On these specific points, we're talking about one against two, and what the bias parameter is. And resampling, and pertaining and corresponding. On Sortino, that's the ballgame, right? Yes, Your Honor. It's fundamentally the same four claim terms. Bias parameter, resampling, pertaining and corresponding to two or more selected investments, and a statistical analysis request. But we pretty much heard, I mean, Judge Toronto has asked for specific reference from both of you, from your experts, who, what's in the record that we can look at, so we can make a substantial evidence call. Nothing new to add on that, right? Your Honor, with respect to that, one of the problems with the Board's opinion is that we supplied expert testimony from distinguished leaders in the field, including a Nobel Prize winner. And the Board simply said that these declarations did not address the claims. And that is just simply not true, Your Honors. If you look at Dr. Savage's declaration, he does provide background. That's correct. But then he ends up with... But that doesn't, whether the Board did or did not, made a mistake on that, doesn't help us unless you're asking us to vacate the Board decision, send it back, and make them do it again. No, Your Honor. We're not asking for that. Yeah. We're still stuck with the problem of trying to figure out exactly what does Sortino teach in respect to these two claim limitations. Right. Your Honor, we particularly commend the testimony of Dr. Savage, of Dr. Herzog. We also commend Dr. Sortino's own testimony about his own references, where he says, I was not trying to come up with a system that would provide an investment portfolio analysis. That's not what I was trying to do. And indeed, the 291 system is completely different. I'd also commend to you, on the record, the... Well, the fact that he was trying to teach a system that ended up doing something else is irrelevant to whether or not his disclosure teach something that's in the patent. Right. You don't have to have equation of purpose in patent law to have a prior reference teach you something. I agree, Your Honor. You can go pull the fish out of any lake you want. Right. I agree, Your Honor. The issue here, though, is that he actually said trying to keep track of things like temporal correlation between investments was detail that he thought was unnecessary noise. That's what he said in his declaration. He said that was... I'm sorry. I missed. He who? Dr. Sortino himself said, on the record, that this level of detail actually took away from... He says, I'm a big picture guy. I want to know what's going on down in the details. Well, he was trying to... But if he's using the big picture picture for two investments at a time, then he's going to read on your investment.  And that's what he wasn't, Your Honor. What he was trying to do was... And I want to commend particularly footnote four in Sortino to your attention. Why wouldn't a reasonable person of ordinary skill think that when you're looking at the S&P 500, you're looking at 500 different companies? You're actually not. Through a particular lens. Right. Actually, you're not, Your Honor. Because when you have, for example, as we all know, if you bought a mutual fund that was indexed to the S&P 500, what you have is simply one investment. Where it is tied to the values of 500 investments based on your market cap. But you don't own any of the underlying securities. You cannot trade any of the underlying securities. You can't change the composition of any of them. Then what happens if you're asking about the S&P 500 for one month and one year compared to one month and another year? Each one of those was separate investments. When I go in and buy, take a put or a call on the S&P 500, I pick the month I want to do it on. I put my money down. That's an investment. Two days later, I go back into the market and I do another one in a different month. That's another investment. What Sertino is doing is selecting various months in various years in which people made investments. Actually, that's not what he's doing, Your Honor. Because as you can see, what he's doing is he's looking at 12 monthly returns for the same investment in the same scenario. Isn't he picking different months? Yes or no? He picks 12 monthly returns, Your Honor. He selects different months. He doesn't take 12 calendar months necessarily. No, but it's only one investment. The thing is he picks one month and then he picks a second month. If I was in the marketplace spending Clevenger hard-earned money, I would make two separate investments when I purchased in those two different months. Why isn't that two investments? Your Honor, in your scenario, it could be. If it was two investments when I wrote a check, right? The January S&P 500 and the June S&P 500, that's two investments. You're absolutely correct, Your Honor. He's looking at exactly that. He's looking at those two investments. Right. If basically you were doing that, that would be fine, except what Sertino teaches is you take that one investment in your first month and then you pick a particular scenario and you bootstrap it. I'm not talking about whether or not there's a bias program. I'm just talking about whether or not it's one investment or two. I'm trying to be very simple-minded about this because that's one limitation, right? Right. All I'm saying to you is that the board seemed to think that looking into the S&P 500 constitutes looking at more than one investment. Right. All I'm asking is whether or not there's substantial evidence behind that. I think I've got you to tell me that when I go out and buy S&P Januaries, that's an investment. When I buy or sell S&P 500s in June, that's a second investment. And Sertino looked at those two different scenarios. All that he tells us is that the 12 monthly returns corresponds to a given investment in a given scenario. He does not address the particular hypothetical, Your Honor, that you're opposing, where you basically have one investment. A given asset would be a January 500 and another asset would be a June 500. That's two different assets. It's a given asset in two different time periods, two separate assets. That is just not discussed in Sertino, where you basically have two different investments based on the S&P 500 that you treat separately. And I understand that could be a scenario. And what Sertino doesn't do is he doesn't… If I do a put on IBM in the morning and I do a call in the afternoon, that's one investment on IBM, but it's two investments, is it not? Your Honor, yes. So it seems to me you've answered my question. So there is possibly substantial evidence to support looking at the S&P when you're picking months within the S&P to be two investments, not just one. Your Honor, let me help you out on something, counsel, because I'm going to ask you the same question I asked you in the last case, because there's a waiver argument here. This time it's resampled statistical distribution and corresponding pertaining to two or more investments. And I want to know where in the record Dr. Varma specifically asked for its claim construction. And with respect to the resampling term, Your Honor, the support for this is found on page 1013. And there is an entire discussion from page 1006 to 1013 and on page 1032 in the record in the Ex parte case. And the same pages are where the pertaining to two or more is discussed and a statistical analysis request is discussed. That's on pages 1006 to 1013 and 1032. And you're telling me that if I look in those, I'll find that Dr. Varma is asking for a particular claim construction? Right. There's a discussion of the claim terms as they should be construed in light of the patent. Of course, the discussion is in the context of the prior argument. This is in the appendix in this case, not in the appendix in the other case. Which appendix were you talking about? Yes, Your Honor. The pages that I cited were from the joint appendix in the Ex parte case. And I think you said something earlier, just it feels relevant here. So if you can clarify that in this reexam process, there's no such thing as a claim construction proceeding or a claim construction brief. You just make your arguments about whether there's prior art invalidity. And in the course of those arguments, you say something about what you think the claim means. But you'd better do it with reasonable clarity, right? Correct. Your Honor, this is an inter partes reexam where that is exactly what is done. However, this Court has held that the Board does need to provide a claim construction in order to do meaningful appellate scrutiny. And here, if you look at what the Board has done, it's hard for us to figure out what the construction is. And more importantly, sometimes the construction... Did you present the claim constructions you're arguing to us now? Yes. Before the Board? Yes. In those pages? Yes. Yes, we did, Your Honor. And more importantly, to the extent that we can divine any kind of claim construction, it appears to be contrary to, for example, the explicit language of the claims. So, for instance, the Board, with respect to bias parameter, they seem to be saying bias parameter is met in Sortino that is not even a bias parameter. It's just a bias after sample selection. And they seem to be saying that after sample selection meets the in-sample selection requirement. And so we're left with wondering, you know, what exactly is the construction? Because it appears to be contrary. And there really is no construction that this Court can even agree to because we don't know what it means. And it's just a question on the claim construction issue. There's been a lot of talk about it. Your view is that in these types of proceedings, there isn't any formal claim construction process. And it emerges from the arguments you're making against each other. And you said in response to Judge Toronto's question, or maybe it was the presiding judge, that before the Board, you made claim construction arguments. Is that correct? Yes. Okay. Did the other side argue waiver at the Board level to you, saying you can't make those claim construction arguments? No. Not that I recall. I didn't see any. Not that I recall. Here the other side is the examiner. The examiner, essentially. Your Honor, I want to reserve the rest of my time for rebuttal. Okay. Thank you. Ms. Rashid. May it please the Court. On the one against two. Is your adversary right in what happens in these types of re-exam proceedings is that there isn't a formal Markman claim construction type setting? That's right. Re-examination is done the way regular examination is done. The Board and the examiner's burden is to make sure that the applicant understands what the Board means, what the claim terms mean. And provides that in a clear manner under what this Court found in junk. And you're not making any argument in this case that the appellant has waived any arguments it's trying to make that relate to claim construction? I do believe that they did waive certain arguments with regards to... You didn't speak up a little bit. Are you arguing waiver? We are arguing waiver with regards to what a re-sample statistical analysis means and what two or more investment means. Because what they said to this Court is different than what they argued before the Board. They kind of rephrased their argument about... You're not arguing that they've lost the right to make a claim construction argument. You're saying their argument is wrong because it's inconsistent with what they argued below. That's right. Because it's an improper new question of claim scope that the agency didn't have a chance to really opine on. And the pages that Mr. Kisan pointed to, at least with regards to the point about whether or not there's this requirement to maintain coherence, all that they said with regards to that point is that Sortino doesn't have a database. So they can't maintain coherence. Sortino doesn't have a key. But that's more... But the Board was relying on Maggio and Calda to provide the database limitations. So this argument that that was a claim construction argument doesn't really follow. I think the big question here though is, you know, does one against two... I have to tell you, I just put my hearing aid in and I still can't hear you. I'm sorry. I'm going to try to speak up. I'll try to speak up. I think the big picture question here is why should it matter for a 103 patentability determination whether there's one request or two requests, right? The point is that the information is desirable. We know that it's desirable... Is it one investment or two investments? That's right. They seem to claim that the ratio is critical, right? One request, two investments. Sortino teaches two investments in the sense that Sortino is analyzing the S&P 500, and the S&P 500 consists of 500 underlying investments, right? I guess I'm having trouble seeing how that's at all a relevant sense. If I buy a share of IBM, IBM has a zillion specific assets. I've got no access to those individual assets, or at least when I'm buying IBM I don't have it. I'm buying a share. The S&P share represents whatever goes into the value. It doesn't really matter what goes into the value. There's a share of S&P, so I don't understand the relevance of that. It would be relevant if Sortino taught anything along the lines that Judge Clevenger was referring to, either puts or calls for different days or following an S&P February 3rd share and what its returns were compared to an S&P February 4th share and what its returns were. Where does Sortino do any of that? Well, Sortino in his declaration actually himself says that... Cite us to the record. Sortino's declaration? That's right. It starts at A776 in Ray Varmus. That paragraph 22, which is on 781? Paragraph 22. Right. Mr. Cason is right to the extent that Sortino admits that he wasn't necessarily concerned about the details of the underlying... He says we don't care about the underlying security. That's right. That's the background noise. That's right, but he goes on to say it was not relevant to him for his particular purpose, right, for asset allocation. We only needed to measure the covariance between the overall asset categories. So they did look at... Sortino did look at covariance between the S&P 500 and Japan, et cetera, and it says that right there. I'm sorry, but it seems to me we keep changing points. That has nothing to do with whether there are 500 companies that go into what makes up the S&P index. The question, though, is that the breadth of the claims, right? The claims are saying pertaining to two or more investments, corresponding to two or more investments. That does not clearly define a correlation of one to two, right? That language is so broad that it doesn't preclude Sortino's analysis of the S&P 500, which... I'm sorry. Where does the board say anything about that other than the top of, I guess, page five of its opinion, JA6, they agree with the examiner who noted that Sortino discloses analysis of the S&P 500 index, which comprises 500 underlying stocks and investments? That's right, but the board also incorporated by reference portions of the examiner's answer and portions of the final office action on A4. So where do those rely on this particular point from Sortino declaration, paragraph 22, the parenthetical about the entire S&P, Japan, et cetera? Well, that point was I was just... The point I was making there was just to counter the point by Mr. Kisan that Sortino is only looking at one asset and no other assets, because he himself says he looked at more than one asset, and he actually looked at the covariance between... In response to single requests? That is, did he do... Is there something in Sortino that says, give me a request for some sort of statistical analysis, and then I do that analysis on at least two assets, as opposed to today I do S&P, tomorrow I do EK, whatever? The examiner went on to explain that not only is it relying on that analysis that the S&P 500 consists of two or more assets, but also the appellant's own arguments of how Sortino works, right? The appellant at A28, where the examiner explains what the appellant argument is, the appellant says that Sortino works... S&P 500 to the U.S. Treasury bond index, right? And so they themselves admit that Sortino can look at two assets. Yeah, but not at the same time. But that's not required. Where does it say that you have to look at them at the same time? That's not in the claims. It's barely in the specification. It's a request regarding two investments. Yeah. No, it's a request corresponding or pertaining to two or more investments, right? Corresponding or pertaining to is very broad language. It isn't like... Well, if corresponding means in any possible relationship to, in any possible way relating to, then the S&P 500 or Berkshire Hathaway is a good example of a holding company. You buy Berkshire Hathaway stock and Berkshire Hathaway is nothing. I mean, it's Warren Buffett in his office in Omaha. It's everything else underneath it. I think for them to establish that type of correlation, they would have had to provide much stronger evidence than the strained extrapolation language that they use, right? And it's not just a request, right? The claim language goes on to say, based upon investment data pertaining to the two or more. We do a analysis. So the analysis, this resampling analysis, I'm having trouble understanding how that can mean anything other than a resampling analysis, the subject of which is at least two investments. I mean, a request could be, you know, somebody comes into Sortino's office and says, I'd like you to do the following four things. You know, if you're looking at the specification or the claim language as revised in isolation, perhaps you can come to that conclusion. But when you look at it in terms of what the specification discloses, it's really not consistent with this idea that they made a one-to-two correlation or that there is one request for two investments. The parts of the specification that they rely on and support are these non-limiting embodiments. They're looking at figures, right, figure 11 specifically, which discloses that some of the databases can store multiple investments for multiple time periods. What are the best places in the spec for the idea that part of what is being covered here was a resampling analysis of a single instrument with, you know, different market values over every day or month or something like that? Well, the disclosure, I think, in column two, lines 53 to 54, 51 to 52, really talks about the fact that it's an investment or investments, right? It's not limited to multiple investments. Nor does it talk about simultaneous analysis. Nor does it talk about this at the same time. You're getting that. It's completely extrapolated from these non-limiting figures that talk about multiple time periods and databases that store information for multiple time periods. And it's your view that these particular claims have to cover – well, maybe I'll ask the question more positively. Are there any other claims that might cover the an investment situation that's not part of – I guess what we have is here claims 22, 23, and 25. That's right. Yeah. That's right. So we – Like many patents, this one could have different claims, and that particular spec reference at column two might not be covered by the two or more investments claim. That's right. Okay. I think the big picture question, though, is who cares if it's one request or two requests? It's still obvious, right? The point is that this is – It's still what? It's still obvious. What's obvious? It's obvious to look at if you know that the information is desirable, right? And if it's obvious to have one request for one investment, why wouldn't it be obvious to have one request for two investments? Did the board say that? I think that's what the board is saying. Like at A6 when the board says that Sortino suggests that – At what? At A6? At A6. Sortino suggests the ability to analyze two or more investments. The examiner goes on to say – Where is this in the board's decision? A6. The sixth line down from the top. Sorry, yeah, the first full paragraph, the second sentence. It doesn't say Sortino suggests the ability. Where does he suggest the ability? There's a lot of suggesting going on in the board's opinion in these two cases. I suggest this and I suggest that. It's not an anticipation rejection. It's an obviousness rejection, right? It makes no sense that you could – it would be desirable to look at one. Where's the declaration that says that? Where's some evidence that says one of ordinary skill in the art would read Sortino to know that you could make one request to look at two investments instead of one? You can make serial requests, right? You can make serial requests under Sortino. It doesn't really matter. You make two requests on the same investment, that's not doing what the claim calls for. That's right. You can make requests on different investments and then combine the analysis the way that the appellant itself understood. It may well be that one of ordinary skill in the art looking at Sortino would say, you know, I could amend Sortino. I could make a little adjustment here because all I've got to do is push a couple of buttons on my computer and I can do two at once. But I don't see that argument being made anywhere. I don't see the people who are challenging the patent made that argument below. I didn't see that piece of the analysis. I think the examiner is saying that. In the examiner's answer, page 28 to 830, it says that it's clear that – On what page? Page 28. 830? Where on page 828 is the examiner saying what you just said? Which line? Well, I think – Which line? It's hard enough to hear what you're saying, ma'am. I'm sorry. I'm trying to speak up. You've got to tell us exactly which lines you're talking about. Let's see. I'm looking at page JA28, which is where you told me to look. I think here the examiner is talking about the fact that the claim language doesn't preclude – Which line? Halfway down? Yeah, halfway down, right before the quote. Made up of 500 stocks. That's right. The breadth of the language pertaining to – And then it goes on to talk about that this also falls within the claim language. The sentences below the quote talk about the combined analysis of the S&P 500 and the U.S. Treasury bond investment, right? The point is – Pertaining to two or more. Right. I think what the examiner is saying is either way, the examiner doesn't see any substantive difference between claim 22 and Sartino. He's not saying one of ordinary skill in the art would have amended, would have known right away to make a little adjustment in Sartino. That's what KSR allows you to do. And the board relies on KSR, right? It's a minor adjustment. He doesn't say that. And the other side isn't making this KSR type argument. Any virtual associate, first level person, right, working at Goldman Sachs would pick up Sartino and say, let's do it on two. I think under KSR – his nine other categories that he explains somewhere in his declaration, they're basically other index funds. He said that we could run this on other index funds. Where is anybody saying in this record that it would be obvious to make an adjustment to Sartino? I think it's common sense to some extent, isn't it? You're telling me it's common sense to you. We're not reviewing you, ma'am. We're reviewing the board. And the board is reviewing the examiner. That's the way it works in this game. If the examiner said it wrong, the board can't rely on something the examiner did or didn't do. The examiner never made a KSR showing here that you could just tweak. You could also tweak Sartino to stick in there if you wanted to, the kind of biasing that they're talking about. But nobody made that argument. So you came along today. I think the board is making that argument, and I think the examiner is making that argument. Show us where other than you pointed to the top of page 6, which is where Judge Toronto was asking you, is there anything more than that? It's, you know, even if... And you didn't make this KSR amend the reference argument in your brief. We did rely on KSR. The board relied on KSR. You cited KSR in a list of cases, but you didn't frame the argument out to say everybody knows that this investment is obvious because one of ordinary skill in the art would tweak Sartino. Well, Sartino himself, the paragraph that I read to you. In a setting where we know the claims were amended on purpose to get away from Sartino. Right. Right? Isn't that why the amendments were made in the re-exam? If they really wanted to get away from Sartino, they could have made very specific amendments, right? This is a very indirect way of trying to get over Sartino but still maintaining this very large breadth of the claims. Can I ask you a question that changes the subject? Sure. Your page 32, footnote 7, the reference to section 101, it ends, if I'm remembering right, with a sentence that says something about a reissue application. Can you just explain what's going on? I'm sorry. Can you repeat the page number again? I think I've got the right case. Oh, right. Page 32, footnote 7. You say, by the way, we kind of think there's a section 101 problem here. I mean, I assume, tell me if I'm wrong, we can't touch 101 here because these are re-exam, both cases are re-exam proceedings and we can't say anything about 101. But then you end with a sentence that say, InvestPIC may wish to consider addressing this 101 issue and it's currently pending reissue application. There is a currently pending reissue application. They have on file a reissue application for this patent? Yes. Does that affect, I guess I could put it most simply, whether we have something to decide here? Does it move this case? There hasn't been a decision in that, in the reissue application just yet. It's pending before the agency. And how does that work? There's something, it's been a while, but something in 252 or 251 about surrendering? That's right. But that doesn't take effect until later? That's right. I think until there's a decision on that reissue application. And what's the status of the reissue petition? It's still pending. Pending in front of the examiner? Pending in front of the examiner. I believe that's right. We'll wrap up. Okay. I guess, you know, just the point about, I guess I'll just follow up on the claim 24. All right. Mr. Keystone started off by saying that the key to his... Is this bias parameter? Yes, the bias parameter, right? The key to the bias parameter is this idea of comparing two or more investments. But what's interesting is that claim 24 is only limited to, according to them, a single investment, right? Found another key. That's right. And I just, I don't know if that really changes anything here with regards to claim 24, right? Because claim 24 requires you to, it requires a bias parameter in determining... Can I ask you this? What's your understanding of what the board decided about what the bias parameter was in Sortino? It seemed to me there are three possibilities. One, two, and the combination of one and two. The scenario definitions, the weighting, or somehow the combination of the weighting of the siloed random resampling results for each of the scenarios. What do you think the board was saying? The board was relying on both, saying that those both are independent reasons why Sortino discloses a bias parameter. With regards to the scenarios, what bias parameter is modifying in this amended claim language is determining a degree of randomness. In the selection of samples. That's the crucial phrase. In sample selection, right. That's right. But this claim, claim 24, makes no distinction between sample selection and sample space. Right, but the other claims do. And is there any reason to think that suddenly in this claim, to my mind, quite familiar statistical distinction between defining the sample space and taking the samples is being collapsed? I think it is because the sample space, according to the way Invespik defines it, is taking samples from the original data set. So if the original data set is N samples, the probability of picking one out of... You began by saying something defines what? The way that Invespik defines resampling is that it is sampling from the original data set. Right? It's the initial selection of samples. Right? That's their definition in their appeal brief to the board. After the sample space has been defined. They keep it pretty broad. Right? They don't necessarily say that. They don't necessarily define it that way in their appeal brief. And so I just think that that is one way of introducing bias by defining the scenarios and limiting sample selection based on limiting the scenarios. There's also, there's no real distinction as the board found and the examiner found between assigning percentages and then applying that after sample selection. Thank you. Thank you. Give Mr. Kees some five minutes. Maybe use some extra time. Thank you. Thank you. If you need it. If you need it. Your Honor, at the outset I want to address the reissue issue. A reissue was filed by Invespik in September of 2014. And a continuation was filed in June of 2015. The prior appellees, IBM and SAS, filed a protest where they have argued that the PTO can elect to stay the reissue pending resolution of the two re-exams. And that's what they've encouraged the PTO to do. And apparently the PTO seems to have done so because there's been no action since September of 2014 to now. So that's the first thing. The second thing is, Your Honors, this patent expires on January 21, 2020. And as such, you know, we're seeing a significant reduction in the patent term. And we believe that we're entitled to the claims as they are presented today in this appeal. So the reissue doesn't really help us. And it appears to be the case that they're waiting on the resolution of these two re-exams. Can I ask you about Sortino Declaration, paragraph 22, and the parenthetical about it wasn't relevant because for asset allocation, we only needed to measure the covariance between the overall asset categories, e.g., the entire S&P, Japan, et cetera. Why does that, which is different from what the board said, why does that not indicate that I, Sortino, wanted to do something that in an analysis compared two different investments, two different things I might go on the market and buy? Yes, Your Honors. And the key thing is the words right after where you stop reading, between the overall asset categories, not the individual underlying securities or stock. Right. So he's not talking about individual investments. That's what he says. No, but why isn't each of the two categories, let's call one the entire S&P, let's call one Japan, I don't know what Japan is, maybe the Japanese stocks on the S&P or something, why aren't those two investments, not the individual stocks, but there's entire S&P and S&P Japan, if that's what he's talking about. What he's referring to are asset categories. What he says in the article is stocks, bonds. He's not talking about two different investments. He's talking about broad asset categories, Your Honor. How was he measuring the covariance between those two categories? What he is simply saying is that to the extent that we need to, we could perhaps look at a single investment that is a single asset category. And here he says it is not relevant because for asset allocation, we only need to measure the covariance between the asset categories. So he's saying to the extent that I have to do anything, it's the asset categories. I'm not looking at the individual investments. And most importantly, Sortino does absolutely nothing to maintain the- Wait a second. The entire S&P is a single investment. You've been saying that. Yeah, it's a single investment, yes, Your Honor, because that's what you get. You get a share in a mutual fund. That's all you get. You don't get any ownership of the underlying securities. What Judge Toronto was saying is you've got an entire S&P and then there's apparently a breakdown of S&P Japan, S&P someplace else. And he somehow is actually measuring the covariance between those two things. Tell me in the English language what that is. When I measure the covariance between the entire S&P and the S&P Japan, what do I get? So what he is just simply trying to- A number? Right. You do get a number. But his only point is that as a user and as an investor, and that's the perspective of the 291 patent, is that as a user you have a couple of investments and you want to know how they attract with respect to each other so that you have diversification. So you don't end up with having ownership of one stock and then ownership of another stock, and they actually seem to behave the same way. And that's the whole temporal correlation idea in Column 2 of the patent. And what he is saying here- But the claim language is talking about investments, two investments, right? Right. And if you bought the entire S&P, that's one investment. And if you bought S&P Japan, that's another investment, right? Right. But what he is simply saying here is that he is saying that I'm comparing the large asset categories. I'm not comparing a mutual fund that is basically one investment and then maybe a stock that's another investment. I must say, the more you talk, the more I'm worried about this. And it seems- can you explain? He says we're measuring covariance of two different assets, not individual stocks. Each asset is a category. Is he doing that by something other than the application of his resampling analysis to those two assets? No, Your Honor. He's doing it through that? The only thing he's doing is he's bootstrapping individual categories. How does he measure covariance between two by doing that? Well, why did he say we needed? That word seems to me to be important in this discussion we're having. He said we needed to measure this covariance between two different things. Right. Why did he need to do it? Well, I think what he's simply trying to say is he's trying to say that to the extent we need to do anything, we're trying to see how these two asset categories move together. To the extent we need to do anything, that's all we're trying to do. And that's all he's trying to say. Covariance is simply a statistical term wherein you can have positive or negative covariance where you may have categories of assets, for example, that might move with respect to each other. And that's really all that it is. What he's saying here is I'm not trying to... But what I'm kind of beginning to understand or misunderstand, which is I guess my problem right now, is that the only analysis he describes or refers to in the paper, the actual piece of prior art, is resampling. I understand how you get covariance out of that, but how do you... So doesn't that suggest that he is describing the application of resampling analysis to two investments, S&P Worldwide and S&P Japan? Those are two assets. I think you agreed, and your position sort of depends on that. But why does this not say this is what I was doing? Well, that's not what he's saying here. He's simply saying that to the extent we needed to do anything at all, we would only need to look at these broad asset categories. We're not looking at individual investments. Yeah, but the broad asset categories happen to be investments. That's your problem. He's clearly saying I don't care anything about the stocks that make up the 500 or that make up the Japan S&P. I don't care about those. And we all agree with that. But if he's looking if the Japan S&P and the big S, S&P 500 domestic, are two different investments, which we think they are, and they seem to be to me. Well, he calls them asset categories. He says they're big categories. And he's saying I'm comparing these categories. I'm really not trying. Why does he need at all to look at S&P Japan? If what he is trying to do is run his resampling and his bias, everything on just the good old S&P 500, why does he need to look at a second investment? Well, he doesn't need to. He says right here we need it. We need it. Okay? What he's basically saying here is it is not relevant for asset allocation because we only need it to look at the broad categories. That's all he's saying. And so he doesn't talk about doing anything. Why is he looking at the covariance? If he said all we need to look at, you know, is we need to look at the asset categories. Why is the covariance between the categories important? And what I conclude from that is that covariance is, of course, simply saying how different distributions move. Let me come back to where I was in the beginning of the other argument. What we're trying to do here is to have a factual finding about what Sortino teaches. And let's assume that the board had said in its opinion, instead of the language it uses, we read paragraph 22 of Sortino's declaration to mean that his system is capable of looking at the same time at two investments. Your Honor, there is no teaching in Sortino that discusses two investments or comparing investments or keeping track of how investments behave with each other. That is why he made the same comment in the same declaration. The 291 system is entirely different. That's why he made that comment, is because I'm not trying to do what the 291 system is doing, which is basically to try to provide guidance to an investor and to make sure that there's real diversification in his portfolio. Right, but just like the specification is always the best source of information, why isn't Sortino's declaration the best evidence of what his disclosure means? We've got a little two-page article he published in a finance magazine, right? And that's the validating reference. But in his declaration, he's trying to explain to us what that reference means. Right. And the reference stands for itself. And we can see that the reference is just four pages and it barely discusses all these things. But in any case, Sortino makes very clear that he was not trying to, in any way, talk about things like temporal correlations. Just a couple of other, really quick, Your Honor. Really, really quick. I want to point out that they have mentioned that the patent only talks about embodiments and doesn't talk about the whole invention. Column two explicitly talks about the invention as a whole and talks about how important temporal correlation is. Column two also talks about how a query corresponds to multiple parameters. So you have a query that can then be linked. Five more seconds. So, Your Honor, it ultimately comes down to the fact that the board failed to provide a claim construction and as a result we're trying to figure out what the board meant with respect to these terms. Thank you, Your Honor. I just say it seems perfectly obvious to me that when I have two stocks, one always goes down when the other goes up.